Turner, J.
 

 An action for damages for the breach of-a contract validly made is not before us.
 

 It is elementary that no valid contract may be made contrary to statute, and that valid, applicable statutory provisions are parts of every contract. Public utility service in this state is regulated by statute and no contract for service may be made by a public-utility except as provided by statute. The only contract which a public utility is authorized to enter into with a customer for service must conform to the schedule filed by such utility in compliance with Section 614-16, General Code, or changed in accordance with Section 614-20, General Code, and thereafter administered under Section 614-18, General Code. A petition for damages for the breach of a contract for public utility
 
 *159
 
 service which does not allege or show that such contract conforms to the rates and conditions prescribed in the schedule filed as aforesaid is demurrable. Sections 614-14 and 614-18, General Code,
 
 post.
 

 Appellee (plaintiff) says in her brief that she “filed her petition in the Common Pleas Court of Huron county, Ohio, wherein she sought damages against the defendant for breach of contract.” Plaintiff’s petition contains no allegation or showing that the alleged contract was such as the utility might enter into.
 

 Plaintiff seeks to recover treble damages under Section 614-68, General Code, but the petition does not allege the violation of any of the grounds which constitute a condition precedent to recovery under such section. Counsel for plaintiff attempted to explain such situation by saying that after a common-law action for breach of contract had been set up, plaintiff had the right to take advantage of the treble damage feature of Section 614-68, General Code.
 

 As already indicated, the petition to be good against demurrer must be for the breach of a valid contract. The treble damage feature of Section 614-68, General Code, is not applicable unless the petition alleges the violation of one of the terms of such section.
 

 Plaintiff alleges in her petition that:
 

 1. Prior to December 28, 1944, she was a subscriber to the service of defendant and was listed in the alphabetical directory of defendant as Mrs. W. Edgar Bell. While that paragraph may be considered as an inducement, certainly there is no allegation of the violation of such paragraph set up in the petition.
 

 2. That thereafter, on or about December 28, she proposed to defendant that she be listed as a subscriber in its' alphabetical directory and also in its classified directory under the name and style of Bell Corset Shop. There is no allegation that the utility
 
 *160
 
 agreed to plaintiff’s proposal or that the utility failed to list plaintiff’s name as proposed. Considering this also as inducement, we continue with the petition.
 

 3. That pursuant thereto she and the defendant on or about the date last mentioned made and entered into an oral contract in substance as follows^
 

 “For and in consideration of $3.50 per month rental and long-distance calls at regular tariff, to be paid as same accrued, by plaintiff to the defendant, the defendant promised to continue its telephone in plaintiff’s residence at 188 West Main Street, Norwalk,. Ohio, keep the same connected with its central exchange, list her in its alphabetical directory at once-as Bell Corset Shop and, upon the next printing of the' classified directory therein as Bell Corset Shop, and; -furnish hei reasonably adequate service without undue discrimination.”
 

 The petition contains no allegation that the utility had any power to enter into a contract to furnish the-claimed service at $3.50 per month rental. The petition contains no allegation that plaintiff paid to the-utility the $3.50 per month rental. The petition contains no allegation that the utility did not list plaintiff' in its alphabetical directory at once as Bell Corset Shop or that upon the next printing of the classified’ directory, plaintiff was not listed as Bell Corset Shop. The claim contained in the phrase “and furnish her reasonably adequate service without undue discrimination” is a legal conclusion and does not set forth any trule, regulation or condition of defendant’s schedule-which has been violated.
 

 Resuming with the petition — plaintiff alleges “that pursuant to its said contract defendant on or about January 5th, 1945, commenced its said service. At or about the latter date or within a day or two thereafter plaintiff was placed by defendant on a party-line with another of its subscribers — a restaurateur
 
 *161
 
 and retail liquor dealer operating a night club.”
 

 There is no allegation in the petition that the utility had agreed to give plaintiff a single-line service or that the agreed rental was for other than party-line service.
 

 Plaintiff’s petition then continues: “that this latter subscriber, his clerks, guests and customers, monopolized the service of said party line to the exclusion of plaintiff.”
 

 There is no allegation in the petition that the utility had- agreed to furnish plaintiff with other than a party line.
 

 Continuing the plaintiff’s petition, it is alleged: “who at divers times complained by writing and in parol to defendant of her unreasonably inadequate service and her undue discrimination. Defendant promised relief but furnished none.”
 

 Just what relief or whether it was relief promised does not appear in the petition. In other words, the allegation that “defendant promised relief but furnished none, ’ ’ under the circumstances is a mere legal conclusion.
 

 Continuing plaintiff’s petition, it is alleged: -
 

 “On or about June 1st, 1945, plaintiff notified defendant that unless she was provided with reasonable service without undue discrimination, she would quit paying until such service was provided. Qn or about July 1st, 1945, defendant disconnected plaintiff from its central exchange and despite remonstrances of plaintiff in parol and by writing has ever since failed and refused to restore plaintiff to its exchange system and to furnish her reasonably adequate service without undue discrimination. ’ ’
 

 There is no allegation contained in the petition that plaintiff performed the conditions of the alleged contract on her part to be performed,
 
 e.’g.:
 
 payment of rental.
 

 
 *162
 
 Plaintiff’s petition continues:
 

 “That by reason of the aforesaid plaintiff suffered loss to her business as a corsetier in that customers were told by defendant’s servants — exchange operators — that plaintiff’s line-was busy, out of order or disconnected; as a direct and proximate result thereof plaintiff’s business declined in net profits from January 20th, 1945, to this date in the sum of $1,000
 

 There is no allegation of the falsity of the statements alleged to have been made by defendant’s servants to plaintiff’s customers to the effect that the line was busy, out of order or disconnected. There is no allegation in the petition that at the time such alleged statements were made to plaintiff’s customers, plaintiff was performing the obligations of such alleged contract on her part to be performed.
 

 The Court of Appeals in reversing the judgment of the trial court proceeded upon the assumption that the plaintiff had set up a valid contx-act in her petition. The cases cited by the Court of Appeals are not applicable here for the reason that the petition in the instant case does not affirmatively, show that the utility had the right or power to enter into the oral contract, the substance of which is set out in the petition.
 

 Section 614-16, General Code, provides in part as follows:'
 

 “Every public utility shall print axxd file with the commission * *
 
 *
 
 schedules, showing all rates, joint rates, rentals, tolls, classifications and charges for service of each and every kind by it rendered or furnished, * * * and all rules and regulations in any manner affecting the same. Such schedules shall be plainly printed and kept open to public inspection. * * * A copy of such schedules or so much thereof as the commission shall 'deem necessary for the use and information of the public, shall be printed in plain type and
 
 *163
 
 kept on. file or posted in such places and in such manner as the commission may order.”
 

 Section 614-14, General Code, provides:
 

 “No public utility shall directly or indirectly, or by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive from any person, - firm, or corporation, a greater or less compensation for any services rendered, or to be rendered, except as provided in this act, than it charges, demands, collects, or receives from any other person, firm, or corporation for doing a like and contemporaneous service under the same, or substantially the same circumstances and conditions. Nor shall free service or service for less than actual cost be furnished for the purpose of destroying competition, and such free service and every such charge is prohibited and declared unlawful.”
 

 Section 614-18, General Code, provides:
 

 “No public utility shall charge, demand, exact, receive or collect a different rate, rental, toll or charge for any service rendered, or to be rendered, than that applicable to such service as specified in its schedule filed with the commission and in effect at the time.
 

 “Nor shall any public utility refund or remit directly o.r indirectly, any rate, rental, toll or .charge so specified, or any part thereof, nor extend to any person, firm or corporation, any rule, regulation, privilege or facility except such as are specified in such schedule and regularly and uniformly extended to all persons, firms and corporations under like circumstances for the like, or substantially similar, service.”
 

 In addition to the foregoing, the petition is defective in other respects.
 

 Plaintiff alleges in her petition: “On or about July 1st, 1945, defendant disconnected plaintiff from its central exchange and despite remonstrances -of plaintiff in parol and by writing has ever since failed and
 
 *164
 
 refused to restore plaintiff to its exchange system and to furnish her reasonably adequate service without undue discrimination. ’ ’
 

 There is no allegation in the petition that plaintiff was not in arrears in the payment of the $3.50 pen month rental as the same accrued. A reasonable inference from the allegations in the petition is that plaintiff had ceased payments at the time her line was disconnected. Her brief does contain the following statement: “Plaintiff refused to pay rentals pursuant to the broken contract.”
 

 The petition does not state facts which show that
 
 defendant
 
 had discriminated against her.
 

 The only, allegation contained in the petition in respect of damages is the following:
 

 “That by reason of the aforesaid plaintiff suffered loss to her business as a corsetier in that customers were told by defendant’s servants — exchange operators — that plaintiff’s line was busy, out of order or disconnected; as a direct and proximate result thereof plaintiff’s business declined in net profits from January 20th, 1945, to this date in the sum of $1,000.”
 

 Plaintiff then asked for treble damages.
 

 We are unable to see how plaintiff could have suffered a recoverable loss to her business by reason of statements claimed to have been made by defendant’s servants in the absence of an allegation in the petition that such statements were knowingly untrue.
 

 In view of what we have said above, it is unnecessary to take up the question of whether a telephone company may t>e held liable where on a two-party line one “subscriber, his clerks, guests and customers, monopolized the service of said party line to the exclusion of plaintiff.”
 

 We do not hold that before plaintiff may recover she must exhaust any administrative remedy. We do hold that her petition to be good against demurrer
 
 *165
 
 must show that the utility had breached a contract which such utility had the power to make.
 

 Therefore, the petition here under consideration does not state facts which show a cause of action and the judgment of the Court of Appeals in the instant case should be and hereby is reversed and the judgment of the Common Pleas Court in the instant case should be and hereby is affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Hart, Sohngen and Stewart, JJ., concur.
 

 Zimmerman, J., concurs in paragraphs one and three of the syllabus and in the judgment.