[Cite as *In re Estate of Shoemaker*, 2017-Ohio-8699.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Case No. 17CA1039 |
| | : | |
| THE ESTATE OF | : | <u>DECISION AND JUDGMENT</u> |
| JOYCE SHOEMAKER, DECEASED | : | <u>ENTRY</u> |
| | : | |
| | : | **Released: 11/16/17** |

<u>APPEARANCES</u>:

John H. Lawler, West Union, Ohio, for Appellant.

David E. Grimes, West Union, Ohio, for Appellee.

McFarland, J.

{¶1} Jean Ann Guthrie appeals the January 5, 2017 judgment entry of the Adams County Common Pleas Court, Probate Division, which denied settlement of the Last Will and Testament of Joyce Shoemaker as being contrary to the testator's intent. Appellant asserts the trial court erred in failing to approve the settlement agreement and in compelling the parties to proceed to litigation. Here, the record does not contain evidence that other beneficiaries were given the opportunity to be heard and, in fact, were also in agreement with the proposed settlement. However, based upon our de novo review of the record, we must overrule the assignment of error and affirm the trial court's judgment.

FACTS

{¶2} On July 25, 2015, Ms. Joyce Shoemaker, a widow with no children, passed away. On September 10, 2015, Ms. Shoemaker's Last Will and Testament was filed with the Adams County Probate Court. On September 14, 2015, Appellant, the designated personal representative under Shoemaker's will, filed an Application to Probate the Will.

{¶3} Subsequent to Ms. Shoemaker's will having been admitted to probate, her nephew-in-law and Appellee herein, Anthony Duane Drummond[1], filed a Complaint to contest the validity of the will. Under the terms of the will, Appellee is a beneficiary of one-half of the residue of Ms. Shoemaker's estate. In his complaint, Appellee alleged: (1) lack of testamentary capacity of testator; (2) improper execution of the will; (3) fraud and/or undue influence by the executrix (Appellant); and (4) breach of fiduciary duty. Appellee named Appellant, Donald Burchett[2], the West Union Church of Christ and the Peebles United Methodist Church, all beneficiaries under the will, as defendants in the will contest.

{¶4} On November 18, 2015, the trial court held a review hearing pursuant to a request from Appellant's counsel. Appellant and Appellee, through their respective counsel, advised the trial court they had reached a settlement agreement

---

[1] Appellee's full name is "Anthony Duane Drummond" although he was identified only as "Anthony Drummond" in the will.
[2] Donald Burchett is the decedent's brother.

which would resolve all matters within the will contest.[3]  The trial court's approval of the settlement was jointly requested.  The trial court then ordered counsel for the parties to brief the relevant legal authority regarding the settlement of will contests by agreement.  The Court also appointed a receiver to manage Shoemaker's estate during the pendency of the proceedings.

{¶5}  Subsequently, counsel for Appellant and Appellee submitted briefs to the trial court urging approval of the settlement.  On January 3, 2017, a review of the accounting by the receiver took place.  At this hearing, the trial court engaged in dialogue with the parties and their counsel regarding the settlement agreement.  On January 5, 2017, the trial court filed its written opinion denying approval of the parties' settlement agreement.

{¶6}  This timely appeal followed.  Additional facts are set forth below where relevant.  Appellant requests this court to reverse the trial court's journal entry and remand the case with instructions to immediately approve the settlement presented to the trial court.  Appellee, however, requests this court to affirm the trial court's decision and instruct the trial court to proceed with the will contest.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED IN DENYING LITIGANTS'
COMPLETE SETTLEMENT OF ALL ISSUES BETWEEN THEM."

---

[3] A summary of the settlement agreement described on the record is set forth, infra.

## STANDARD OF REVIEW

{¶7}  The subject of the appealed-from judgment entry is the oral settlement agreement between Appellant and Appellee.  The trial court denied enforcement of the parties' agreement to settle at the hearing on review of accounting although neither party had filed a formal written motion requesting enforcement.  We therefore consider the matter before us as on denial of a joint oral motion to enforce settlement.

{¶8}  "The standard of review applicable to a ruling on a motion to enforce a settlement agreement depends upon the issues disputed, and may present a mixed question of law and fact." *Mathews v. Eastern Pike Local School Dist. Bd. of Edn.,* 4th Dist. Pike No. 12CA831, 2013-Ohio-4437, ¶ 14, quoting *Barstow v. O.U. Real Estate, III, Inc.,* 4th Dist. Athens No. 01CA49, 2002-Ohio-4989, ¶ 36.  "If the dispute is an evidentiary one, we will not reverse the trial court's determination that a settlement exists as long as the trial court had sufficient evidence before it as to the terms of the settlement." *Id.,* citing *Chirchiglia v. Ohio Bur. of Workers' Comp.,* 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (7th Dist.2000).  If the dispute is a question of law, we must employ a de novo review to determine whether the trial court's decision to enforce the settlement agreement is based upon an erroneous standard or a misconstruction of the law. *Barstow, supra,* at ¶ 36, citing *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.,* 74

Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). This case presents a legal issue of whether the trial court erred by refusing to enforce the settlement agreement based on the trial court's philosophy that the testator's intent should prevail over the parties' presumably valid agreement.

LEGAL ANALYSIS

{¶9} Appellant directs our attention to this court's decision in *Taylor v. Connell,* 26 Ohio App.2d 253, 271 N.E.2d 305 (4th Dist.1971), for the proposition that parties may, by agreement, settle or compromise their differences and agree to voluntarily dismiss a will contest as long as there is no fraud or collusion, and as long as all interested parties are included in the agreement. Appellant also cites the well-known principle that the law favors prevention of litigation by compromise and settlement. *State ex rel. Wright v. Weyandt,* 50 Ohio St.2d 194, 197, 363 N.E.2d 1387 (1977). Appellant points out the agreement the parties have reached is only slightly different than the decedent's expressed desires in her will; the remaining beneficiaries are to receive exactly what the will provides for them. Appellant also notes the outcome of further litigation is much more uncertain and costly. Finally, Appellant emphasizes that both parties to this appeal desire the court's approval.

{¶10} In response, Appellee acknowledges that on November 18, 2015, the parties attempted to enter into a settlement agreement which would have resolved

all matters including the will contest. However, Appellee now expresses regret in attempting to enter into the settlement agreement and requests this court to affirm the trial court's decision and remand the matter with instructions to proceed with the will contest. Appellee further notes that since the appointment of a receiver in this matter, as of January 3, 2017, $24,677.50 had been expended on behalf of the estate. Appellee concludes that settlement of the matter on the original terms as set forth in Appellant's brief is impossible.

{¶11} At the January 3, 2017 review hearing, the trial court addressed the issue of the parties' jointly proposed settlement. The trial court recognized the public policy in favor of settlements. However, the trial court's opinion concluded as follows:

> "It is the humble opinion of the undersigned that the importance of strictly adhering to the "Will" of a Decedent has been casually and surprisingly cast aside by the undersigned's more learned brethren in the Superior Courts.* * * It has long been established in the State of Ohio that when construing a Last Will and Testament, the court's goal is to implement the intent of the testator as set forth in the documents. (Internal citations omitted.) The sole purpose of the court should be to ascertain and carry out the intention of the testator, and such intention is to clearly be ascertained from the words actually contained in the will. *See also Stevens v. Natl. City Bank* (1989), 45 Ohio St.3d 276, 278, citing *Ohio Citizens Bank v. Mills* (1989), 45 Ohio St.3d 153, 155.

> * * *

> It is this Court's fervent opinion that the intent of Testator's Last Will and Testament should be upheld in strict compliance with the clearly ascertained terms of Declarant's desires of disposition of her hard

earned worldly effects. Ms. Joyce Shoemaker said what she meant and she meant what she said when framing the terms of her Last Will and Testament. Settlement contrary to the Last Will and testament of Joyce Shoemaker is hereby denied."

{¶12} We begin with a review of the relevant guiding principles. A settlement agreement is a contract designed to prevent or end litigation. *Mathews, supra,* at ¶ 21; *Continental W.* at 502, 660 N.E.2d 431. *See also Ingle-Barr, Inc. v. Scioto Valley Local School District Bd.,* 4th Dist. Pike No. 07CA676, 2009-Ohio-5345, at ¶17. "The law favors prevention of litigation by compromise and settlement. * * *" *Kirschbaum v. Dillon,* 58 Ohio St.3d 58, 567 N.E.2d 1291 (1991), quoting *State ex rel. Wright v. Weyandt,* 50 Ohio St.2d 194, 363 N.E.2d 1387 (1977), syllabus; *Shallenberger v. Motorists Mut. Ins. Co.*, 167 Ohio St. 494, 505, 150 N.E.2d 295, 302 (1958). So long as there is no evidence of collusion, in bad faith, to the detriment of other, non-settling parties, the settlement of litigation will be encouraged and upheld. *Kirschbaum, supra.* A trial court possesses full authority to enforce a settlement agreement voluntarily entered into by the parties. *Matthews, supra*; *Mack v. Polson Rubber Co.,* 14 Ohio St.3d 34, 36, 470 N.E.2d 902 (1984).

{¶13} As a preliminary matter, we find the appeal has not become moot by virtue of Appellee's apparent change of heart and request that the trial court's judgment be affirmed and the matter remanded for the purpose of proceeding with the will contest. In *Walland v. Rinehart*, 8th Dist. Cuyahoga No. 51935, 52672,

1987 WL 8579, an appeal of a trial court's enforcement of an oral settlement agreement, the appellate court observed the true basis of the appeal was whether the appellant might unilaterally rescind a settlement agreement after thinking it over and deciding it to be unfair. The court wrote at *2: "This issue is not new and has been decided in the negative: mere dissatisfaction with a settlement will not permit repudiation of the agreement. *Mack v. Polson Rubber Co.,* 14 Ohio St.3d 34, 37, 470 N.E.2d 902 (1984); *Spercel v. Sterling Industries, Inc.,* 31 Ohio St.2d 36, 39, 285 N.E.2d 324 (1972). Noting the strong public policy favoring the settlement of disputes without litigation, the *Rinehart* court opined the trial court did not err in ordering enforcement of the settlement since there was no issue as to the agreement's existence or terms and since appellant's reason to set it aside was insufficient. Once there is a meeting of the minds as to the essential terms of the contract, one cannot refuse to proceed with settlement due to a mere change of mind. *Chase Home Finance v. Keys,* 8th Dist. Cuyahoga No. 99920, 2014-Ohio-2639, ¶ 13, quoting *Mack, supra.*

{¶14} In further support of Appellee's position that the settlement agreement should not now be enforced, Appellee relies upon the well-established maxim that "A court speaks through its journal." Appellee points out the agreement in this matter has never been journalized and argues that, as such, it is not enforceable. Indeed, it is preferable that a settlement be memorialized in

writing. *Mathews, supra,* at ¶ 22; *Pawlowski v. Pawlowski,* 83 Ohio App.3d 794, 798–799, 615 N.E.2d 1071 (10th Dist.1992). However, an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract. *Spercel v. Sterling Industries, Inc., supra,* at 39; *see also Brown v. Dillinger*, 9th Dist. Medina No. 05CA0040-M, 2009-Ohio-1307, ¶ 11. Terms of an oral contract may be determined from "words, deeds, acts, and silence of the parties." *Mathews, supra,* at ¶ 22, quoting *Rutledge v. Hoffman,* 81 Ohio App. 85, 75 N.E.2d 608 (1947), paragraph one of the syllabus; *see also Ford v. Tandy Transp., Inc.,* 86 Ohio App.3d 364, 380, 620 N.E.2d 996 (1993). Therefore, we do not summarily find the agreement to be unenforceable because its terms were discussed only orally at the hearings of record.

{¶15} "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Mathews, supra,* at ¶ 23, quoting *Perlmuter Printing Co. v. Strome, Inc.,* 436 F.Supp. 409, 414 (N.D.Ohio 1976). A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations,* 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).

{¶16}  "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear," and if there is uncertainty as to the terms then the court should hold a hearing to determine if an enforceable settlement exists. *Mathews, supra,* at ¶ 24, quoting *Rulli v. Fan Co.,* 79 Ohio St.3d 374, 376, 377, 683 N.E.2d 337 (1997).  A court cannot make a contract for the parties or force them to settle. *Listinger Sign Co. v. American Sign Co.,* 11 Ohio St.2d 1, 14, 227 N.E.2d 609 (1967).  If the court cannot determine from the parties' manifestations as reasonably interpreted in the light of all the circumstances, what the agreement is or how to enforce it, no enforceable obligation exists. *Id.,* citing 1 Corbin on Contracts, 394 and 398, Section 95.

{¶17}  Appellant submitted a chart in her brief which compared the bequests under Shoemaker's will with the terms of the settlement between the parties.  We have reviewed Shoemaker's will and the hearing transcripts of November 18, 2015 and January 3, 2017 and are satisfied that the submitted chart correctly reflects the terms of the settlement agreement.  The chart set forth is as follows:

| Bequest | Under Will | Under Settlement | Difference |
| --- | --- | --- | --- |
| West Union Church of Christ | $10,000.00 | $10,000.00 | 0.00 |
| Peebles Methodist Church | $2,000.00 | $2,000.00 | 0.00 |
| Appellant | Home & 21.613 acres | $100,000.00 | Unknown |

| Appellant | Pets & $30,000.00 | Pets | $30,000.00 |
|---|---|---|---|
| Don A. Burchett | ½ Estate. Residue | ½ Estate. Residue | 0.00 |
| Appellee | ½ Estate. Residue | ½ Estate. Residue | 0.00 |

{¶18} Along with consideration of the principles of contract, we recognize a court may refuse to enforce a contract when it violates public policy. *DeVito v. Autosdirect Online, Inc.,* 8th Dist. Cuyahoga No. 100831, 2015-Ohio-3336, at ¶ 37; *Marsh v. Lampert,* 129 Ohio App.3d 685, 687, 718 N.E.2d 997 (12th Dist.1998), citing *Garretson v. S.D. Myers, Inc.,* 72 Ohio App.3d 785, 788, 596 N.E.2d 512 (9th Dist.1991). R.C. 1302.15, unconscionable contract or clause, provides:

> (A) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

> (B) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

{¶19} Appellant argues that the trial court erred by denying enforcement of the jointly proposed settlement agreement in light of the public policy favoring settlement of litigation. In this case, while recognizing the long-standing public policy in favor of settlements, the trial court here engaged in an in-depth discussion

of the competing interests: (1) the public policy which encourages settlement of litigation, and (2) the superiority of the testator's intent with regard to disposition of property. Thereafter, the trial court denied enforcement of the settlement agreement giving preference to the testator's intent in a will admitted to probate and assumed to be valid on its face. The trial court's decision made no finding that the oral settlement agreement of Appellant and Appellee failed as to the basic principles of contract law, violated public policy or that it was otherwise unconscionable in some regard.

{¶20} In *2-J Supply, Inc. v. Garrett & Parker, LLC,* 4th Dist. Highland No. 13CA29, 2015-Ohio-2757, this court reviewed a trial court's decision denying enforcement of a valid attorney fee provision. The trial court made a finding that attorney fees would be denied because Plaintiff-Appellant cited "no statutory authority that allows the Court to make an award of attorney fees." *Id.* at ¶ 7. In *Garrett,* we looked to the Supreme Court of Ohio's decision in *Wilborn v. Bank One Corp.,* 121 Ohio St.3d 546, 2009–Ohio–306, 906 N.E.2d 396, at ¶ 8, wherein the Court explicitly acknowledged the rule that agreements to pay another's attorney fees are normally enforceable and not void as against public policy because it recognizes the fundamental right to contract. *Garrett,* at ¶ 6. In *Garrett* at ¶ 15 we found: "By ignoring the well-recognized contract exception to the

general rule prohibiting a prevailing party in a civil action from recovering for its attorney fees, the trial court abused its discretion."

{¶21} While our decision in *Garrett* was within the context of an attorney fee dispute, its reasoning is equally applicable. In *Garrett,* we observed:

> "Persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. * * * Government interference with this right must therefore be restricted to those exceptional cases where intrusion is absolutely necessary, such as contracts promoting illegal acts." *Id.* at ¶ 19, quoting *Nottingdale Homeowner's Assoc., Inc. v. Darby,* 33 Ohio St.3d at 36, 514 N.E.2d 702 (1987).

In *Garrett,* we found the record contained evidence of an enforceable contract between the parties for the payment of reasonable attorney's fees, and thus, no evidence warranting the trial court's interference with the lawful agreement of the parties.

{¶22} Pertinent to this appeal, we observe the Supreme Court of Ohio's decision in *Andes v. Shipp,* 165 Ohio St. 275, 135 N.E.2d 396 (1956). Annotation, 42 A.L.R.2d 1319, which held: "By the weight of authority, agreements made by competent adults settling or compromising will contests are valid and enforceable and do not contravene public policy. In *Skelly v. Graybill,* 109 Ohio App 277, 165 N.E.2d 218 (5th Dist.1959), the appellate court quoted 57 American Jurisprudence 653, Section 1005, where it is stated:

> "According to most authorities, an agreement between the beneficiaries under a will, for the purpose of avoiding litigation

regarding their rights, to adopt a plan for the destruction of the estate different from that provided by the will is valid and enforceable, provided the rights of creditors are not infringed, and trust provisions are not modified or destroyed."

{¶23} In our decision in *Connell*, 26 Ohio App.2d 253, at 256, this court reluctantly recognized the validity of such agreements:

"The law in this respect seems to be well settled.

Though in some jurisdictions an agreement to dispense with the probate of a will has been declared to be against public policy and void, in a majority of the decisions on the point, it has been held that all the persons interested in a decedent's estate may by agreement divide the estate among themselves, without probating such decedent's will or administering the estate, and the validity of a contract having for its sole purpose the disposition of property in a manner different from that proposed by a testator, even where the contract contemplates the rejection of the will when offered for probate or its setting aside when admitted to probate, when it is entirely free from fraud, and is made by all the parties in interest, would seem to be freely conceded."

As did the trial court herein, we opined at the time of the *Connell* decision that "[t]he propriety of the rule that contracts to suppress valid wills are themselves valid is, at best, very doubtful." *Id.*

{¶24} In light of the applicable Ohio case law, therefore, it would appear that by refusing to enforce the presumably valid oral settlement agreement proposed by Appellant and Appellee, the trial court erred as a matter of law. However, our de novo review has yielded no evidence as to whether the other parties to the will contest were given the opportunity to be heard as to the proposed

settlement.  In *Bland v. Graves,* 99 Ohio App.3d 123, 650 N.E.2d 117, (9th Dist.1994), a will contest action, one of the arguments on appeal challenged that certain settlement agreements were void as against public policy, collusive, and the result of improper ex parte hearings conducted in violation of Canon 3(A)(4) of the Code of Judicial Conduct.  However, the appellate court found the contentions to be without merit.  In particular, the appellate court cited *Krischbaum v. Dillon,* 58 Ohio St.3d 58, 69–70, 567 N.E.2d 1291, 1302, (1991), noting that "[s]o long as there is no evidence of collusion, in bad faith, to the detriment of other, non-settling parties, the settlement of litigation will be encouraged and upheld."

{¶25}  The *Graves* court found the *Krischbaum* decision to be particularly illuminating in respect to the appellants' attack on the validity of the settlement agreements.  In *Krischbaum,* the plaintiffs, heirs at law, brought a will contest action alleging lack of testamentary capacity and undue influence.  The defendants in *Krischbaum* were the two named beneficiaries in the decedent's will.  Prior to trial, one of the defendants, Riker, settled with the will contestants.  On appeal, the other defendant, Dillon, contended that it was contrary to public policy to permit the will contestants to settle the action with one beneficiary to the detriment of the remaining beneficiary.  The Supreme Court rejected Dillon's argument, finding that "[a]lthough, as a result of settling with the contestants, Riker abandoned his position in the litigation, he had no obligation to maintain his position

notwithstanding that he had reached a satisfactory settlement with the contestants."

*Id.* at 69, 567 N.E.2d at 1302. Thus, the court concluded that in the absence of

evidence that the settlement agreement was the product of collusion, made in bad

faith, or otherwise detrimental to a non-settling party, the settlement was valid and

enforceable.

{¶26} In *Graves,* although the appellants were challenging the validity of

the settlement agreements as will contestants, not beneficiaries, the court found

that the same result as in *Krischbaum* followed. The appellate court noted the

*Graves* appellants had offered only broad, general, and conclusory allegations of

collusion and bad faith while absolutely failing to point to any specific evidence in

the record that would substantiate their allegations or support invalidating the

settlement agreements. The *Graves* appellants had directed the appellate court's

attention to Canon 3(A)(4), regarding ex parte communication, which the court

found to be wholly misplaced.[4]

{¶27} The *Graves* court found the appellants' argument that the probate

court's ex parte and in camera review of the settlement agreements denied them a

full right to be heard to be meritless. Importantly, the appellate court wrote:

---

[4] Canon 3(A)(4) of the Ohio Code of Judicial Conduct provides:
"A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate not consider ex parte or other communications concerning a pending or impending proceeding. * * * Nothing contained herein, however, shall preclude a judge from non-substantive ex parte communications on procedural matters and matters affecting prompt disposal of the business of the court."

"The main impetus for the October 14 evidentiary hearing was to evaluate the possibility of settlement, and the appellants were present, had an opportunity to be heard and, in fact, indicated that they might consider a settlement offer. Clearly, the October 14 hearing was not ex parte, and the probate court did nothing after the hearing to restrict the appellants from fully and equally participating in any settlement negotiations with the defendants-appellees."

{¶28} The *Graves* court found the record did not contain any evidence that the settlement agreements were the product of collusion, made in bad faith, or otherwise detrimental to the appellants, the non-settling parties in the litigation. The *Graves* court concluded absent such evidence, the settlement agreements must have been upheld.

{¶29} Here, there was no evidentiary hearing. Evidentiary hearings, as previously explained, are normally requested when terms of a settlement agreement or existence of a settlement agreement are in question. The hearings herein, where settlement was discussed, were not the legal equivalents of evidentiary hearings. *See Aristech Chem. Corp. v. Carboline Co.,* 85 Ohio App.3d 251, 257, 620 N.E.2d 258 (4th Dist.1993).

{¶30} Ostensibly, due to the fact that the other interested parties in this case, Donald Burchett and representatives of the two churches, were "included" in the settlement agreement, and due to the fact the agreement provided the same provisions for them as did the will, it may have appeared that an evidentiary hearing was not required. However, unlike the defendants in *Graves,* the other

beneficiaries here did not have an opportunity to be heard, consider the settlement offer, and otherwise participate in the negotiations. While *Appellant* and *Appellee* agreed to various terms to settle the will contest, as set forth in the submitted chart, the record is void of any representations of counsel or sworn testimony that the other defendants to this will contest were in agreement with the disposition.

{¶31} In *Aristech, supra,* 620 N.E.2d 258, 262, we quoted the United States Court of Appeals for the District of Columbia Circuit which observed:

> "A motion to enforce a settlement contract is neither ordinary nor routine. * * * Its relative simplicity is a concession to the policy favoring settlements, but only to the extent that full and fair opportunities to prove one's point are substantially preserved. The parties on both sides of appellants' lawsuit had valuable interests at stake in the motion proceeding * * *. To the extent that their several representations to the court left issues of fact for determination, they are entitled to an evidentiary hearing." *Autera v. Robinson* (C.A.D.C., 1969), 419 F.2d 1197, 1203."[5]

{¶32} In this matter, we find an evidentiary hearing should have been conducted to determine whether the decedent's brother and any representatives of the two churches named in decedent's will had objections to the settlement. Just because the submitted agreement *included* them does not mean they were consulted in any way when the negotiations occurred, given the absence of evidence on this point. Just because the submitted agreement provided the same

---

[5] Ohio courts have reached similar holdings. *Aristech, supra,* at 620 N.E.2d 258, 262. *See Chiampo v. Williams* (Sept. 8, 1991), 9th Dist. Summit No. 14903, 1991 WL 184826; *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.*, 8 Ohio App.3d 236, 239, 456 N.E.2d 1309, 1313 ( 1982).

disposition for the other beneficiaries as in the will does not mean those beneficiaries should not have had an opportunity to be heard on the matter involving them, prior to dismissal of the will contest action.

{¶33} As such, the sole assignment of error is hereby overruled. Accordingly, we affirm the judgment of the trial court, albeit on an alternative basis.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court, Probate Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.:  Concur in Judgment Only.

For the Court,

BY:  _____
Matthew W. McFarland, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**